May it please the Court, John DeFranco on behalf of Kenneth Mike Workman. Your Honors, my argument is that the denial of relief in this case is contrary to clearly established federal law and objectively unreasonable. The chronic decision is the thrust of my argument. Trial counsel's performance at sentencing was effectively a complete denial of counsel. Trial counsel entirely failed to subject the prosecutor's case to meaningful adversarial testing. The facts that are in support of my argument are trial counsel's own statements at sentencing. I think that it's a fine line between effectiveness and abandonment. However, counsel's statements regarding a god-awful crime, if coupled with an acknowledgment of the choices, or a series of choices, or a lifetime worth of choices, could have been powerful mitigation. But instead it was just a bald statement. The fact that trial counsel stated he was left empty, that could have been an incredible way to describe how everyone was feeling about what happened, but instead it was just left there as a bald statement. Reasoning that those statements are part of a strategy, and that was part of the thrust of the denial of habeas that I thought was an unreasonable inference. What was empty was counsel's argument at sentencing. Can I ask you to explain the context? As I understand it, he at one point said something about a briefing or talks about he thought he could get a 10-year sentence. But he was represented by counsel, and he agreed to a plea where he would get a fixed 25 and a discretionary life. The judge ultimately rejected that and fixed the life as well. So in the argument that was being made by counsel to the judge, should we assume that he was trying to keep the judge from doing what she ultimately did? That is, he was asking for mercy in that the judge would agree with what Mr. Workman had agreed to? That's the question as to whether or not what happened at that sentencing hearing ultimately was strategy. And that 10-year conversation I thought was very telling of the lack of a relationship between counsel and his client. I mean, that was the subject matter of a bar complaint. Well, I just want to clarify. Are you attacking the voluntariness of the plea agreement itself? I think that issue has already been addressed, and I don't think that you can address that fairly. But you can consider it. I'm sorry to interrupt you. I agree. That's not before us. We have to assume that it was a voluntary plea. So if that's true, I restate my question, and then you can go ahead, is do we assess what counsel was doing as trying to make sure that the plea agreement at least was upheld and that the judge wouldn't go hard? Well, so, and I think that the fact that they're not on the same page with regards to 10 years would be a ridiculous request under the circumstances and facts of these things. And it doesn't go to the voluntariness. What it goes to is whether the client and the attorney are on the same page tactically for the purposes of a sentencing strategy. And the reality is there is no sentencing strategy. There is no meeting of the minds between client and attorney. And the attorney is being given credit for having a strategy that is I'm going to avoid the worst-case scenario by just simply falling on my sword, doing nothing, and being empty. And somehow that's going to result in the outcome that we're looking for. The reality is the duty of sentencing is you have to go in there and defend that plea agreement. You have to hold the prosecuting attorney to that recommendation. And you have to couple remorse and regret and a showing of mitigation in hopes that you can get the court to consider 25 years. The reality is that you'll never be able to walk out of the penitentiary. You have huge problems here. I'm sorry, Your Honor. You have two huge problems in making this argument. One is AEDPA. One of it is? AEDPA, i.e. that we have to take the state court decision as unless it's unreasonable. And the second is that what we have to take as unless it's unreasonable is a decision, not that there was an effective assistance because the stricter claim isn't here, but whether that there was no defense. All right. So those are two huge hurdles. They are two huge hurdles. And I can appreciate that. And they're directly related to each other, of course. And I can appreciate the fact that trial counsel was there for the waiver of the preliminary hearing. Trial counsel was there for the entry of plea. Trial counsel showed up at sentencing. But the reality is that this case was never a trial case. This case was always going to come down to sentencing. And this case was always going to come down to a sentencing where the aggravation evidence that was presented in the form of victim witness testimony was going to be incredibly. But I gather that, you know, if this was a stricter claim, you might well have an ineffectiveness determination. But the problem is proving prejudice. So presumably that's why we don't have a stricter claim. Well, and I don't think it could survive on a Strickland analysis. For that reason. Well, certainly. All right. So that's the problem. I mean, you have to fit into a very narrow hole. It is. Which suggests this was an extremely bad lawyer. It's more than this was an extremely bad lawyer. There has to be findings. You've got to tell us why we ought to be putting it into that extremely narrow hole, which is beyond this is a really, really, really terrible lawyer. I'm to the point that there's no lawyer. And it's, if you're going to provide chronic relief, you're going to have to at some point say that even though an attorney is there, even though an attorney's lips are moving and he's making an argument, you have to look at the substance of the argument. You have to look at the presentation of the argument. You have to be critical in determining whether or not it's unreasonable, whether or not it's substantial, whether or not it falls beneath the chronic standard where you can presume prejudice. Strickland is just not, you're not going to get to a prejudice because the judge acted within the boundaries of her discretion and the maximum sentence was life. And certainly the facts are as bad as you could possibly imagine. But the reality is it's the abandonment, the fact that there's no effort made at sentencing. And there's things that are illustrative that really, I mean, when you read the record, Bristle is a lawyer. The fact that a trial counsel would refer to the prosecuting attorney by her first name is just, nobody does that. And you can just see that the attorney has listened to the testimony of the expert regarding the substances in this gentleman's body. They've listened to this incredibly powerful aggravation evidence from these victims  And ultimately, there's no argument to address that. And beyond that, there's the lack of objection to the court's comment of 25 years being the plea agreement, but then ultimately in the same breath saying, I'm going to impose fixed life, I'm going to follow the plea agreement, but ultimately. But that seemed to be just a mistranscription. In my jurisdiction, plea agreements are given great weight. And I think that the court wants to encourage the parties to work together. What I mean is I don't think that that particular thing ever happened. It seemed to be a mistranscription. Either a misspeaking or a mistranscription. One or the other. She didn't meet. She either didn't say it or she didn't meet it. Well, you know, it's hard because I've practiced in front of this judge for many years. And I think the reality was that she was strongly considering the plea agreement, but said, I cannot follow this in light of the facts. She didn't say, I'm going to follow it. She said, I'm not going to follow it. Exactly. But the point that I think is important to consider under the circumstances is that had the attorney provided some mitigation, there would have been a strong willingness to go along with this. If the attorney would have acknowledged the remorse, if the attorney would have been on the same page with his client that making this argument for 10 years makes no sense, you could have maybe gotten that court to the point where they would have said, 25 years is a long time. Another issue, restitution. Restitution in light of somebody not having insurance, not having a driver's license, that was empty. But saying that after 25 years this guy could go out and get a minimum wage job and make token payments as a representation of his remorse, that's something that he wants to do today. He wants to go sit out this incredible sanction. There was no argument. The sentencing made absolutely no sense, and it was a total abandonment of counsel. I'm sorry to interrupt you. So I'm going to make the rebuttal. Thank you very much. Thank you. Thank you. May it please the Court, Jessica Larello for the respondents. The issue that was presented by Mr. Workman on appeal in this case is, of course, whether he's entitled to the presumption of prejudice under chronic or whether Strickland applies. The Idaho Supreme Court did not act contrary to the United States Supreme Court precedent when Mr. Workman argued before that court that he was entitled to the presumption of prejudice. To use the language of the Supreme Court of the United States, his claims are clearly of the same ilk of those sorts that are considered under Strickland. Chronic does not apply. The argument that the defense counsel did not test the government's case at sentencing is frankly belied by the record. He did make an argument, and that argument was an expression of remorse, an acceptance of responsibility, regret by the defendant. Remorse and regret are words that counsel today used as examples of things that should have been argued at sentencing. And that's exactly what was done. One of the comments also made today, the attorney. I can't think that you're abandoning. I mean, you spent most of your brief arguing that this chronic issue wasn't properly before us, and I don't understand that argument. You're not making it now. Your Honor, I wasn't saying the chronic argument wasn't properly before you. I was my argument in that regard was just based on the terms of the COA, and it was unclear whether the COA, because of the language regarding procedural default, was a COA as to the Strickland issue, which was procedurally defaulted, or whether or not the COA covered both a Strickland claim and a chronic claim. I think both parties agree that the chronic claim is exhausted and properly before the district court and this court on appeal. So that's what those arguments went to. But I did address the chronic argument as well and why he is not entitled or why the Idaho Supreme Court under AEDPA did not act. I don't know what I understood you to be saying, but that's okay. Go ahead. I understood you to be saying that the chronic issue was not part of the COA. Well, it wasn't clear to me whether it was or was not. All right, but we're over that. We're not doing that. But yes, so yes, the chronic argument is properly before the court if that's part of the COA. But back to the comment made today about how the attorney provided some mitigation at the sentencing, then there would not have been an abandonment. And I would just highlight for the court something that was noted by the state district court in post-conviction and the federal district court on the habeas petition. There has been no presentation of evidence by Mr. Workman of what mitigation could have been presented by counsel. In the appellant's brief on appeal to this court, they cite something from the traverse in the federal habeas proceedings. That's not evidence that was before the state trial court. And frankly, the PSI that was submitted to the trial court for sentencing did have some information regarding family support, and that was basically the mother of Mr. Workman's children said he was a good father. But there was nothing that he presented even then to the pre-sentence investigator regarding any sort of family support. And again, there's just never been any evidence presented, despite numerous opportunities to show that there was some mitigation counsel could have presented to the state trial court at sentencing. So I think at the end of the day, Judge Fischer, what you note is exactly right, is counsel's argument was designed to keep the judge from doing what she did, to try and get the judge to follow the terms of the plea agreement, which was 25 to life. And, you know, counsel commented. This was not an intentional attack, right? He was driving with heroin and everything else, and he did terrible things to these people. But it was, I mean, one obvious point of mitigation was it wasn't an intentional crime. And I think that point was made, Your Honor, is that throughout, that he didn't do that. It wasn't an intentional act on him. He didn't mean for it to happen, and, therefore, that's the strategy. Remorse. Throw yourself at the mercy of the court. And if the court goes back even to the guilty plea transcript, and counsel said today there was no weeding of the minds on the strategy, I just don't think that's consistent with the record. If you look at the guilty plea transcript, counsel says what Kenny's trying to do is save the state a lot of money and basically come clean and fess up for what he's done. And even the defendant, when asked why he's pleading guilty, he says, because my case is kind of hard to prove in court, and like I say, he says, save the taxpayers some more. I would probably be found guilty anyway. And then counsel noted, was talking about this confusion about counsel recommending 10 years, and there was no weeding of the minds on that. And he referenced the complaint to the Idaho State Bar, and I would just note for the court that letter is in the record. It's not in the excerpts, but it is in State's Logging E-2 at page 238, and that letter says Mr. Workman's claim was that defense counsel convinced him to plead guilty, argue to the sentence recommendation of 25 years to life, and throw himself on the mercy of the court. So it seems to me the record supports that this was a decision made between defense counsel and Mr. Workman that our strategy is ask for the court's mercy, and that was a completely acceptable and appropriate constitutional strategy in this case, given the facts, given Mr. Workman's criminal history, his 30-year addiction. I mean, the state trial court outlined its reasons for imposing fixed life and rejecting the 25-year to life recommendation. So unless the court has further questions, the state would ask it to affirm the district court's dismissal of Mr. Workman's habeas petition. Anything else? Thank you very much. Thank both of you for your arguments in Workman v. Blades. The case is submitted, and we will go on to Carrillo v. Corsi.
judges: Fisher, Berzon, Watford